AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### District of Oregon

| | |
|---|---|
| United States of America<br>v.<br><br>DENIS ACOSTA-GAMEZ, and<br>CHRISTIAN GARCIA-ACOSTA,<br><br>*Defendant(s)* | )<br>)<br>)   Case No.  3:23-mj-00036<br>)<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __March 3, 2023__ in the county of __Multnomah__ in the _____ District of __Oregon__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), and (b)(1)(A)(vi) | Possession with intent to distribute controlled substances (fentanyl) |

This criminal complaint is based on these facts:

See the attached affidavit of DEA Special Agent ▇▇▇▇▇▇▇

☑ Continued on the attached sheet.

/s/ Signed by telephone
*Complainant's signature*

▇▇▇▇▇▇▇ DEA Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at __12:36__ a.m./p.m

Date: __03/04/2023__

*/s/ Stacie Beckerman*
*Judge's signature*

City and state: __Portland, Oregon__      STACIE F. BECKERMAN, U.S. Magistrate Judge
*Printed name and title*

DISTRICT OF OREGON, ss:                                   AFFIDAVIT OF ▮

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, ▮ being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1. I have been employed as a Special Agent by the Drug Enforcement Administration (DEA) since June 2022. I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. My current assignment is at the Portland District Office where I am assigned to a DEA federal task force. My formal education includes a Master of Science in Criminology with a focus in Human Behavior. My formal law enforcement training includes successfully completing 26-week Basic Recruit Training at the Denver Police Academy in Denver, Colorado, followed by field training in Denver, Colorado. Also, I have successfully completed Basic Agent Training course at the DEA academy in Quantico, Virginia. I have participated in multiple drug investigations involving controlled purchase operations, surveillance, arrests, interdiction, vehicle tracking, cell phone geo-location techniques, trap and trace orders, and Title III wiretaps. I have interviewed and operated informants, executed search warrants, arrested and interviewed subjects involved in the smuggling and distribution of narcotics, conducted physical surveillance, and utilized electronic and video surveillance. I have also worked with and consulted numerous agents and law enforcement officers who have investigated drug trafficking offenses.

2. As a Special Agent, I have participated in numerous drug investigations as either the lead case agent or as a supporting investigative agent, including in Title III wiretap

investigations. I am familiar with investigations of Drug Trafficking Organizations (hereinafter, "DTOs"), including identifying methods of importation and distribution of controlled substances, and how controlled substances are manufactured, consumed, packaged, marketed, smuggled, and distributed. I am also familiar with various tactics used by DTOs to import drugs into the United States, communicate with members of the DTOs, and arrange for transportation and distribution of drugs.

3. I submit this affidavit in support of a criminal complaint and arrest warrant for:

- **Denis ACOSTA-GAMEZ ("GAMEZ") and**
- **Christian GARCIA-ACOSTA ("ACOSTA")**

for violations of Title 21, United States Code, Sections 841(a)(1), and (b)(1)(A)(vi) possession with intent to distribute controlled substances (fentanyl) (hereinafter collectively the "Target Offenses").

## Applicable Law

4. Title 21, United States Code, Sections 841(a)(1), and (b)(1)(A)(vi) makes it illegal to posses controlled substances with intent to distribute them. Violations involving 400 grams or more of fentanyl, a Schedule II controlled substance, are punishable by 10 years' to life imprisonment, a fine of $10 million dollars, and not less than five years' supervised release.

## Sources of Information

5. ███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████

6. ████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████

## Statement of Probable Cause

████████████████████████████

7.      In early 2023, Agent's with the Drug Enforcement Administration Portland Group D-51, Tigard Police Department, and Homeland Security Investigations (herein "Investigators) have been investigating individuals suspected of trafficking large quantities of methamphetamine and fentanyl. ████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████

████████████████████████

8.      ████████████████████████████████████

██████████████████████████████████████████████

9.

The user of SP-7128, who Investigators later identified as GAMEZ, agreed to provide a large quantitiy of blue M-30 pills to the CD at the parking lot of the Fred Meyer located at 1111 NE 102nd Avenue, Portland, Oregon.

### March 3, 2023: Investigators Contact GAMEZ and ACOSTA via SP-7128

10. At approximately 12:47 p.m., Investigators arrived near the agreed upon location just before the agreed upon time, and began surveillance of the area in anticipation of GAMEZ's arrival. At approximately 1:19 p.m., GAMEZ, using SP-7128, informed             GAMEZ was only seven minutes away from the deal location and would arrive in a white Toyota. During the consensually recorded telephonic communications between                       Investigators heard a second voice in the background of the vehicle and surmised that GAMEZ was traveling with a companion.

11. Based on my training, experience, and consultation with other Investigators, I know that drug traffickers often travel with partners so that one member of the team can act as a lookout while the other facilitates drug transactions. This is done because drug distributors are often conscious of the risk of robbery while dealing narcotics, or interception by law enforcement. Working with a partner allows one individual to be interacting with customers or

preparing narcotics for delivery, while the other can pay attention to the distributors' surroundings for potential threats or law enforcement personnel.

### March 3, 2023: Investigators Stop GAMEZ and ACOSTA and Seize Drugs and Drug Proceeds

12. At approximately 1:25 p.m., Investigators observed a white Toyota Camry bearing Oregon plate 158MFL driving south of Fred Meyers, traveling towards NE Pacific Street. A few moments later I observed the same Camry driving slowly through the Fred Meyers parking lot. The driver of white Camry appeared to talking on the phone and looking around the area, as if the driver was attempting to locate someone. I observed the white Camry drive through the parking aisles in an indirect and aimless route. Investigators observed the white Camry drive to a parking spot near NE Pacific Street and idle in the parking spot. I observed the driver, later identified as GAMEZ, open the door and exit the vehicle as GAMEZ continuously appeared to be looking for someone. Shortly after, GAMEZ returned back to the inside of his vehicle and appeared to call someone. The vehicle was parked halfway in a parking spot with a driver and one occupant inside.

13. At approximately 1:35 p.m., Oregon State Police (OSP) Trooper ▮▮▮ who initiated a vehicle stop of the white Camry by activating overhead lights of their clearly marked patrol vehicle and maneuvered their vehicle visibly behind the white Camry. When Trooper ▮▮▮ approached the vehicle he saw in plain view through the window large amounts of mixed denomination U.S currency throughout the car, a small digital scale with a white residue on the floorboard, and packaging materials consistent with narcotics sale and use. As Trooper ▮▮▮ was speaking with the driver, GAMEZ, Trooper ▮▮▮ contacted the other occupant who was seated in the rear passenger seat. The passenger was later identified as ACOSTA. Trooper

███ watched as ACOSTA made furtive movements towards the rear passenger center console as if ACOSTA was attempting to conseal something. OSP Troopers ███ and ███ both noted an overwhelming odor of marijuana coming from the Camry, and that both occupants appeared to be smoking at the time the troopers approached the CAMRY.

14. Trooper ███ and Trooper ███ detained GAMEZ and ACOSTA in hadcuffs without incident. Investigators patted down both men and removed items from their pockets. Investigators discovered a large roll of mixed denominations of U.S. currency in the pant pocket of ACOSTA. A Spanish speaking Investgiator approached the two men and first spoke with Acosta. Investigators and asked if there were any drugs or other illicit items in the vehicle. ACOSTA responded that there was marijuana in the car.

15. Investigators explained they were looking for more serious narcotics or weapons and wished to search the car. ACOSTA responded that it was okay. Investigators asked if the Camry belonged to ACOSTA and he signaled that GAMEZ was the owner of the vehicle. Investigators then approached GAMEZ and asked if the vehicle was his. GAMEZ agreed that it was. Investigators told GAMEZ he wished to search the car for drugs and weapons. GAMEZ gave consent for Investigators to search the car. Based on the consent of both men as well as the mobile vehicle exception, Investigators proceeded to turn the car off, remove the key from the ignition, and search the Camry.

16. Inside the vehicle investigators found drug packaging, a digital scale, and a multiple packages of bulk quantities of narcotics including what appeared to be fentanyl pills. Inside a shoe box near the rear console Investigators found a approximately fifteen thousand blue pills stamped "M-30" suspected of containing fentanyl sub-dividided into thousand pill bags. I

know based on my training, experience, and consultation with other Investigators, that blue M-30 pills are sold in units of one hundred (rolls) for distribution and units of a thousand (boats) for wholesale sub-distribution. Investigators found blue M-30 pills in various location in the white Camry during their search. These were later processed and found to weigh approximately 1,590.0 gross grams (ggs) with packaging (totaling approximately 10,000 to 15,000 pills) which field tested presumptive positive for fentanyl. Investigators also found a backpack near where ACOSTA had been sitting and discovered approximately 455.7 gg of methamphetamine and a large roll of mixed denomination US currency consistent with street level drug proceeds inside.

17. In addition to the blue M-30 fentanyl pills and methamphetamine, Investigators discovered approximately 181.5 ggs of fentanyl powder, and 38.5 ggs of heroin inside the white camry. Each drug was field tested and resulted in a presumptive positive for their respective drug. Below are photographs of the drugs seized from the white Camry.[1]

   

---

[1] A small baggie of user quantity of marijuana was found in the Camry. Investigators photographed the marijuana, but did not seize the marijuana.

18. In addition to the money found in ACOSTA's pant pocket and in the backpack, Investigators found a mix of U.S. currency concealed throughout the white Camry. Based on my training, experience, and consultation with other Investigators, I know that drug traffickers often maintain the proceeds of their street level narcoitcs deals, which are generally mixed denominations of U.S currency, obtained from their drug distribution activities.  Further, I know that street level drug dealers attempt to conceal their drug proceeds in separate locations broken into small quantities for fear of being robbed by customers or intercepted by law enforcement. Below are photographs of money seized from the white Camry. Below are photos of the drug proceeds found in the white Camry:

  

19. Investigators confirmed that SP-7128 was present inside the Camry by calling SP-7128, and observed a cellphone retrieved from GAMEZ's possession ring. Additionally, the phone stopped ringing once Investigators ended the call. GAMEZ and ACOSTA were notified that they were being arrested for drug-related violations.

***Post Arrest Statements***

20. Spanish-speaking Investigators interviewed GAMEZ and ACOSTA individually. Prior to their interviews, each were provided their rights in Spanish per DEA issued Miranda advisement card and each said they understood their rights.

21. ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

22. Based on the foregoing, I believe that GAMEZ and ACOSTA possessed with intent to distribute appoximatley 1,590.0 ggs of counterfeit oxycodone pills containing fentanyl (approximately 10,000 to 15,000 pills), 181.5 ggs fentanyl powder, 455.7 ggs of methamphetamine, and 38.5 ggs of heroin.

23. Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Paul Maloney, and AUSA Maloney advised me that in his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

### Request for Sealing

24. It is respectfully requested that the Court issue an order sealing, until further order of the Court, all papers submitted in support of the requested criminal complaint and arrest warrant. I believe that sealing these documents is necessary because the information to be seized

is relevant to an ongoing investigation, and any disclosure of the information at this time is likely to seriously jeopardize the ongoing investigation. Premature disclosure of the affidavit, the criminal complaint, and the arrest warrant may adversely affect the integrity of the investigation.

/s/ Sworn to by telephone
In accordance with Fed. R. Crim. P. 4.1

███████

DEA Special Agent

Sworn to by telephone at ___12:36___ a.m./p.m. this ___4th___ day of March 2023 in accordance with Fed. R. Crim. P. 4.1.

*Stacie F. Beckerman*
HONORABLE STACIE F. BECKERMAN
United States Magistrate Judge